Submitted on briefs March 25, decided June 22, 1909.

## LACHMUND *v.* LOPE SING.

[102 Pac. 598.]

CONTRACTS—CONSTRUCTION—REPUGNANT CLAUSES.

1. The rule that, where in a contract clauses are repugnant, the earlier provisions prevail, if the inconsistency be not so great as to avoid the instrument for uncertainty, is subject to the qualification that the contract must be construed to effect the intention of the parties as gathered from the entire instrument, and where there are repugnant clauses, they must be reconciled, if possible.

CONTRACTS—INTENTION OF PARTIES.

2. The intent, and not the words, is the essence of every agreement, if it can be ascertained therefrom.

CONTRACTS—CONSTRUCTION—REJECTION OF REPUGNANT CLAUSES.

3. The rule rejecting a repugnant clause of a contract in construing it is an expedient to which a court will not resort, unless absolutely compelled to do so.

SALES—CONTRACTS—CONSTRUCTION.

4. A contract for the sale and purchase of a crop of hops, binding the seller to sell the crop, and to deliver "contract" hops, binding the buyer to purchase "contract" hops, and to make advances, providing that, on the failure of the seller to do anything which a careful husbandman would do to produce "contract" hops, the buyer may receive the same at a reduced price, and where the seller for causes beyond his control is unable to deliver "contract" hops, the buyer will accept in satisfaction of the agreement the hops raised at the reduced price, and giving the buyer the right, prior to making the advances called for, to examine the hopyard, and releasing him from liability to make further advances, or to accept the hops, if on inspection it appears that "contract" hops cannot be produced, etc., is complied with by a delivery of a lower grade of hops resulting from conditions for which the seller is not responsible, and the mortgage clause in the contract is available to the buyer only for liquidated damages, where by reason of the negligence of the seller, the hops are of inferior grade; and the buyer, on finding that "contract" hops cannot be produced, because of conditions not the result of the neglect of the seller, cannot refuse to make advances and terminate the contract.

SALES—CONTRACTS—ABANDONMENT.

5. The act of a buyer of a crop of hops in refusing to make the advances called for by the contract, or to be bound further by the contract, is an abandonment of it, precluding a recovery of advances previously made, where the seller was not in default.

From Marion: WILLIAM GALLOWAY, Judge.

Statement by MR. JUSTICE EAKIN.

This is a suit by Louis Lachmund and Julius Pincus partners doing business under the firm name and style of Louis Lachmund & Co., against Lope Sing, Oliver Beers, and Seid Back, to foreclose a contract and chattel mort-

gage on certain hops. The portions thereof, material to the issues here, are as follows:

"Agreement dated February 5, 1907, between Oliver Beers and Lope Sing, of Marion County, State of Oregon, called herein the seller, and Paul R. G. Horst, called herein the buyer, concerning the hop crop of the seller for the year 1907, and the sale of hops, not the product of the first year's planting, bright, even color, fully matured, free from mold or vermin damage, cleanly picked, properly dried and cured and put up in good merchantable order * * herein called 'Contract Hops' to be grown, harvested and prepared for market by the seller on that certain hopyard herein called the 'Hopyard' situated on that certain farm in Marion County, State of Oregon * * owned by Oliver Beers.

"First. The seller agrees, during the year 1907, in a careful and husbandlike manner, and in due season, to do all things which may be necessary in order to produce from the hopyard, contract hops, and to bargain and sell and he does hereby bargain and sell, and he does agree to deliver to the buyer in one lot * * forty thousand (40,000) pounds net weight of contract hops from the hopyard. * *

"Second. The buyer agrees to purchase forty thousand (40,000) pounds of contract hops of the crop of hops raised by the seller upon the hopyard in the year 1907, and to accept and receive the same when delivered in pursuance of this agreement, and to pay therefor the sum of twelve (12) cents per pound, that is to say: to pay one ($1.00) dollar at the time of the signing hereof; eight hundred ($800.00) dollars on or about April, 1907, and twenty-four hundred ($2400.00) dollars during the picking season as the same shall be actually required. * *

"Third. Should the seller neglect or fail to do anything which, as a careful husbandman, he should do, in order to produce the contract hops, and if by reason thereof, or for any cause, the hops raised shall be inferior to contract hops, the buyer shall have the right and privilege of receiving and accepting so many thereof as are contract hops at the contract price, and the balance of the quantity contracted at a reduction in price equal to the difference in value between the hops tendered and contract hops * * but in the event that the seller, for causes beyond his control, is unable to deliver contract hops and, for

this reason, is unable to comply with this contract, the buyer agrees to accept, in satisfaction of this agreement, the hops raised and delivered at the reduced price, to be ascertained as above provided, but should the seller and the buyer fail to agree upon a price at which the inferior hops shall be accepted in fulfillment of this contract, then, in that event, the seller agrees to return all advances heretofore made with interest to the buyer upon demand.

"Fourth. It is contemplated between the parties hereto, that the seller shall require an amount not exceeding thirty-two hundred ($3,200.00) dollars at the time specified, for the purpose of enabling him to pay the expenses of properly cultivating and caring for the hopyard and of picking, drying, curing and baling the product thereof, and for this reason and for these purposes, the buyer agrees to advance said sum at the times and in the manner and upon the request above mentioned, * * that should the seller make default in this agreement and by reason of such default, the buyer not being in default, 40,000 pounds of contract hops be not delivered in pursuance of this agreement, the buyer may recover of the seller damages for the seller's breach of this agreement, and in such event it is hereby agreed that the difference between the contract price and the market value at the time of delivery of forty thousand pounds of contract hops, together with all advances, with interest, are hereby fixed as the liquidated damages which the buyer shall recover from the seller for such breach. * *

"Fifth. The buyer shall have the right, prior to making any of the advances provided, to examine the condition of the hopyard, and if the hop crop at the time when such advances should be made, in pursuance of this agreement, is in such condition that contract hops cannot be grown, picked, cured and delivered therefrom, the buyer shall be absolved from the obligation to make further advances, but all advances already made hereunder, with interest, shall be repaid to the buyer upon demand."

The sixth subdivision is intended as a chattel mortgage of the whole crop to secure the buyer for the payment of the liquidated damages specified in subdivision four.

The complaint alleges that, pursuant to the terms of the contract, Horst advanced to defendant $1,329.42, and

that thereafter, about September 10th, and prior to the
time the money for picking was required to be advanced,
Horst ascertained that the hops were moldy and inferior
to the hops called for by the contract, and that contract
hops could not be picked, cured, and delivered from said
yard on account thereof; that Horst notified defendants
that he would not advance money for picking, and would
not be further bound by the terms of the contract, and
demanded repayment of the advances already made.
Thereafter Horst assigned to plaintiffs the contract and
mortgage, and all his right and interest thereunder, and
this suit is brought to recover the sum of $1,329.42,
with interest, and to foreclose the mortgage securing the
repayment thereof. At the time Horst refused to make
further advances the seller was unable to proceed with
the picking without financial aid. Thereupon, in consid-
eration of a bill of sale executed by the seller to defendant,
Seid Back, transferring and delivering to him all the
sellers's right, title in, and possession of, the crop, Seid
Back took charge of the hopyard, paying the laborers
for the work already done, and completed the harvesting
and baling thereof.

Defendants deny that plaintiffs are entitled to recover
from them the amount of the advances, and allege that
they performed all the conditions of the contract, and
that Horst, without cause, refused to comply with the
terms of the contract. There is evidence offered by
the plaintiffs tending to show that some portions of the
hop field were affected with mold, and that portions of
the baled hops, after the harvesting was completed, also
contained considerable mold. Hop dealers were called
as witnesses, and testified that hops are graded, according
to quality, as medium, medium to prime, prime, prime to
choice, and choice, and that contract hops, as defined
in the contract, calls for choice hops. Most of the
plaintiffs' witnesses testified that defendants' hops
graded as medium to prime—three grades below choice—

and one witness testified that they were two grades below choice. The trial judge found as a fact that defendants performed their part of the contract in doing all that careful and skillful husbandry could do to raise the kind and quality of hops called for by the contract, and did raise 40,000 pounds of contract hops, and rendered a decree that plaintiffs take nothing by their suit, and that the complaint be dismissed. Plaintiffs appeal.                                         AFFIRMED.

Submitted on briefs under the proviso of Rule 16 of the Supreme Court, 50 Or. 580.

For appellants there was a brief over the names of *Mr. John A. Carson* and *Mr. Thomas Brown.*

For respondents there was a brief over the names of *Mr. William Kaiser, Mr. Henry E. McGinn,* and *Mr. John J. Fitzgerald.*

MR. JUSTICE EAKIN delivered the opinion of the court.

1. The defendants, Lope Sing and Oliver Beers, contracted to raise, on the Beers place, and sell to Horst, 40,000 pounds of contract hops at 12 cents per pound, and they were bound to do so if by careful and husbandmanlike labor such a crop could be produced. However, subdivision three of the contract, without modifying subdivision two thereof, as to advances, provides that, if by careful husbandry contract hops cannot be produced, Horst shall accept the hops in satisfaction of this contract, even though they are not contract hops, at a reduction in price equal to the difference in value between the hops tendered and contract hops. Plaintiffs rely upon subdivision five of the contract as releasing the buyer from liability to make further advances, or to accept the hops if, upon inspection, it appears that contract hops cannot be produced. That subdivision does not, in terms, negative the buyer's obligation to accept a lower grade than contract hops in satisfaction of the contract, but does

provide that, if contract hops cannot be produced, the buyer shall be released from making advances, and the seller shall repay the advances made, and this is repugnant to the provisions of the last part of subdivision three. The general rule is that, where in a contract clauses are repugnant and incompatible, the earlier prevails, if the inconsistency be not so great as to avoid the instrument for uncertainty. 1 Sheppard's Touchstone, 88; 2 Parsons, Contracts, *513; *Daniel* v. *Veal*, 32 Ga. 589; *Petty* v. *Boothe*, 19 Ala. 633. This rule is subject to the qualification, however, that the ·contract must be construed to effect the intention of the parties as gathered from the entire instrument; and, if there are repugnant clauses, they must be reconciled, if possible.

2. The intent, and not the words, is the essence of every agreement if it can · be ascertained therefrom. *Henderson* v. *Mack*, 82 Ky. 379.

3. The rule that rejects a repugnant clause of a contract is an expedient to which a court will very reluctantly, in any case, have recourse, and never unless absolutely compelled to do so. *Bush* v. *Watkins*, 14 Beav. 425. This contract cannot be construed literally, and give effect to every part of it. Subdivision three provides that, in the event the seller—for causes beyond his control —is unable to deliver contract hops, the buyer agrees to·accept, at a reduced price, in satisfaction of this agreement, the hops raised. Thus the delivery of low grade hops, resulting from conditions for which the seller is not responsible, will be a compliance with the contract as fully as the delivery of contract hops would have been. But by the latter part of subdivision four it is specified that liquidated damages may be recovered by ·the buyer should the seller make default, and 40,000 ·pounds of contract hops be not delivered. The only reasonable interpretation of this clause is that it applies to a violation of subdivision one, and the first part of

subdivision three, of the contract, which provides that, for the neglect or failure of the seller to do anything necessary to produce contract hops, it shall be optional with the buyer to accept inferior hops at a reduced price; and such neglect or failure of the seller is the default referred to in subdivision four, and it can have no application to the latter part of subdivision three, which provides that a delivery of inferior hops, under the conditions mentioned, shall be a satisfaction of the contract. The same construction must be put upon subdivision five, or it must be eliminated entirely. If, upon an inspection of the hopyard, as provided in subdivision five, it is found to be in such a condition that contract hops cannot be produced, nevertheless, if such condition is not the result of neglect or failure of the seller to do something necessary for the production of contract hops, the buyer will not be justified in refusing to make advances, as he is still under obligation to accept, in satisfaction of the contract, inferior hops; and, in such a case, the seller is not in default, and subdivision five must be construed as dependent upon the default of the seller. This construction will give effect to every part of the contract, and is in accordance with the clear intention of the parties, as gathered from the whole instrument.

4. There is no suggestion, in either the pleadings or the evidence, that defendants were in default in anything necessary to be done on their part to produce contract hops, and the evidence of plaintiffs' witnesses shows that the grade of the hops produced was at least medium to prime, or prime, and—considered most favorably to plaintiffs—if the hops were less than contract hops, they were so for causes "beyond the seller's control," and were such as the buyer agreed to accept at a reduced price. The buyer could not therefore refuse to be further bound by the terms of the contract, or require the seller to refund the advances theretofore made, unless the seller had refused to deliver the hops or agree with

the buyer upon a price at which they were to be delivered. It is unnecessary for this court to determine whether the hops produced were contract hops. By the last part of subdivision three of the contract the conditions of the liability of defendants to repay the advances made— if the hops produced are a lower grade than contract hops, without the fault of defendants—is that "the seller and buyer shall fail to agree upon a price at which the inferior hops shall be accepted in fulfillment of this contract." The mortgage clause of the contract (subdivision six) is available to plaintiffs only for the liquidated damages provided for in subdivision four, namely, when by reason of neglect or fault of the seller the hops are of inferior quality, or, if they are contract hops, the seller refuses to deliver them. A situation may arise, and evidently did arise, by reason of which contract hops will not be called for by the contract, namely, in the event inferior hops are produced without fault of the seller, and under such condition the seller will not be in default in the delivery of contract hops to be "delivered in pursuance of this agreement." The contract relates only to the hops raised on the Beers place, and not that the seller shall deliver contract hops at all events. It is only when "by reason of such default * * 40,000 pounde of contract hops be not delivered" that there shall be a liability, for example, if, through no lack of diligence or fault of defendants, hops of marketable quality are not raised, the seller would not be liable for damages under this clause of the contract. And it is not necessary now to determine what the effect of such a situation might have upon the right of plaintiffs to recover advances made, as that issue does not arise.

5. It appears by the allegations of the complaint that, when the buyer concluded that contract hops could not be grown, picked and delivered from the yard, he refused to make any further advances, and refused to be bound further by the contract. If the seller was not in default

at that time, the buyer's conduct was an abandonment of the contract, and he cannot recover the advances made thereon. *Neis* v. *O'Brien,* 12 Wash. 358 (41 Pac. 59: 50 Am. St. Rep. 894) is in point upon this question, being a suit to recover advances made on a hop contract, in which it is stated: "It was not the fault of the respondent that this contract was not fulfilled, but wholly the fault of appellant. The respondent offered to perform all that the contract required of him, but the appellant, having made part performance, stopped short, and refused to proceed to the completion of the contract. * * To permit the appellant to recover under the circumstances of this case, we think, would be to establish a dangerous precedent." To the same effect are *Witherow* v. *Witherow,* 16 Ohio 238; *Hansborough* v. *Peck,* 5 Wall. 497 (18 L. Ed. 520); *Walter* v. *Reed,* 34 Neb. 544 (52 N. W. 682).

The decree of the lower court. is affirmed.

AFFIRMED.