Argued May 2, decided May 23, rehearing denied June 22, 1911.

## GAINES *v.* VANDECAR.

[115 Pac. 721: 115 Pac. 1122.]

APPEAL AND ERROR—GROUNDS OF REVIEW—PRESERVATION.

1. Where a judgment, entered on motion of defendant, recited an order sustaining a demurrer to the complaint, and that plaintiff had failed to amend, and merely awarded costs to defendant, but did not order the complaint dismissed, defendant cannot first urge, on motion to dismiss plaintiff's appeal, that the judgment was not final; it being defendant's duty to see that a proper judgment was entered.

CONTRACTS—CONSTRUCTION AS TO PARTIES—SEVERAL CONTRACTS.

2. A contract between plaintiff and the grain growers of a county, drawn by a layman and binding the growers to pay to plaintiff half the amount of any reduction in grain rates on the crops grown by the growers, procured by plaintiff, provided in one clause that the parties of the first part (the farmers) promised, etc.; the next clause stated that they, "and each of them," promised, and a final clause, added before signing, stated that it was understood between the parties that the parties of the first part should not be deemed sureties for each other on the contract. *Held,* that the contract should be construed as a whole, and the intent of the parties gathered, if possible, by giving due consideration to every part; and so construed the contract must be held to bind each grower to pay only on the amount of grain raised by himself, so that

the contract was several only, and defendant, one of the growers, was properly sued alone.

CONTRACTS—MUTUALITY—NECESSITY—SERVICES.

3. A contract by grain growers bound them to pay half the amount of any reduction in grain rates, whether the reduction was made voluntarily by the railroads, or resulted from agitation set on foot by plaintiff, or from proceedings instituted by plaintiff, or from any other cause. No time was limited in which the reductions should be made, in order to create a liability to plaintiff. In consideration thereof, plaintiff promised to commence an agitation for the reduction of grain rates and to prosecute the same with diligence, and to institute such proceedings before the State Railroad Commission, or the courts, as he should deem necessary for the purpose, and to hire all lawyers or other agents at his own expense. *Held*, that plaintiff's promises were not to do any definite thing which could be enforced specifically or by damages; and hence there was no mutuality of obligation, and the contract was not enforceable by plaintiff.

CONTRACTS—CERTAINTY—NECESSITY.

4. Every contract must be definite and certain as to the terms to be performed by either party; and, where the court cannot fix the exact legal liability of the parties, the contract is unenforceable.

CONTRACT—PLEADING—CONTRACT VOID FOR UNCERTAINTY.

5. Where a contract did not specify any particular thing that plaintiff was required to do, and was so uncertain and indefinite as to render is unenforceable, it would not aid plaintiff to allege generally in his complaint that he had performed all of the conditions of the contract.

From Baker: WILLIAM SMITH, Judge.

Statement by MR. CHIEF JUSTICE EAKIN.

Plaintiff, F. W. Gaines, brings this action to recover judgment against Byron Vandecar upon a contract made between plaintiff's assignor, George Peebler, and various grain growers of Baker County, Oregon, of whom defendant is one. The contract is in the following words, viz.:

"This agreement entered into this 11th day of May, 1908, between the undersigned grain growers of Baker County, Oregon, hereinafter designated as the parties of the first part, and George Peebler, party of the second part, witnesseth: That whereas the cost of shipping grain from all points in said county to Portland are excessive and unjust and the said party of the second part is undertaking to secure a reduction of such freight rates: Now, therefore, the said parties of the first part in consideration of the promises hereinafter set forth to be kept and performed by the said party of the second part,

hereby promise and agree to pay in money to the said
party of the second part, one-half the difference between
the existing rates and any reduction from present rates
of transportation upon each ton of grain grown for sale
by the said parties of the first part during the year in
which said reduction in existing rates shall become oper-
ative, and they and each of them bind themselves, their
executors, and administrators to make such payment as
soon as such reduction in existing rates shall become
operative whether the said reduction shall hereafter be
voluntarily made by the said transportation lines convey-
ing from said territory, or the said reduction in said rates
shall result from the agitation set on foot by the said
party of the second part, his agents, servants and em-
ployees, or from proceedings instituted by the said party
of the second part for such reduction or from any other
cause. The said party of the second part in consideration
of the covenants and agreements hereinbefore set forth
to be kept and performed by the said parties of the first
part hereby promise to commence an agitation for the
reduction of existing freight rates on grain from said
territory and from other points to Portland, Oregon,
and prosecute with diligence and to institute such pro-
ceedings before the State Railroad Commission of the
State of Oregon, or in the courts of said State as said
party of the second part shall deem necessary and proper
for the purpose of securing such reduction in said rates
and to hire all lawyers, agents, servants and employees
as he may deem proper at his own expense to conduct
such agitation and such proceedings. It is however
mutually understood and agreed by and between the par-
ties hereto that the said parties of the first part shall
not be deemed sureties one for the other upon this con-
tract.

> Names:   George Peebler,
>                Byron Vandecar,
> Post Office:   Haines, Oregon."

Plaintiff alleges fulfillment of the terms of the contract
on the part of Peebler, and that on September 30, 1909,
the Railroad Commission, as a result of a hearing had
upon case No. 152 (not one filed by Peebler), in the pres-
entation of which he aided, ordered a reduction in freight

rates on grain from points in Baker County of 35 cents per ton; that defendant raised about 180 tons of wheat for sale in the year 1909, the reduction of freight on which, as a result of the order of the Railroad Commission, if that had been the provision of the contract, would be $63. And plaintiff asks for judgment of one-half of that amount.

Defendant demurred to the complaint, for the reason that there is a nonjoinder of parties defendant, and that the complaint does not state facts sufficient to constitute a cause of action. The demurrer was sustained, and plaintiff declined to plead further. Thereupon, on February 13, 1911, the court rendered judgment for defendant as follows:

"Upon motion for judgment in favor of the defendant for his costs and disbursements in this court and in the lower court, and it appearing to the court that on the 14th day of December, 1910, an order was duly made and entered herein, sustaining defendant's amended demurrer to plaintiff's second amended complaint filed herein. And it further appearing to the court that plaintiff has failed to file another amended complaint, or in any manner moved herein, and that no objections being interposed at this time, it is therefore considered, ordered, and adjudged that the defendant have and recover of and from the plaintiff his costs and disbursements, and his costs and disbursements in the lower court, and that execution issue therefor."

Plaintiff appeals.                    AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. O. B. Mount.*

For respondent there was a brief over the names of *Messrs. McColloch & McColloch,* with an oral argument by *Mr. C. C. McColloch.*

Opinion by MR. CHIEF JUSTICE EAKIN.

1. The transcript on appeal was filed March 18, 1911, and after the briefs upon the appeal were filed on April

29, 1911, a motion to dismiss the appeal, for the reason
that the judgment is not final, was filed by defendant,
and this motion is first insisted upon.   There is no doubt
that defendant, by his motion, sought to obtain a final
judgment, and both parties, as well as the court, con-
sidered that the judgment rendered was such.   The
recitals therein disclose a case ripe for judgment, and it
was only a clerical omission that it did not state that the
case be dismissed.   If defendant's counsel did not draw
the entry, it was his duty to see that it was correctly
entered; and he has treated it as a final judgment until
filing this motion, and he should not now be heard to
question its form.   And we are justified in recognizing
it as final, and the motion is denied.

The contract was evidently drawn by a layman, who
did not understand the technical meaning of some of the
terms he used.   By the contract, the first parties are
made liable for one-half of the difference between the
existing rate and any reduction that may be made.   The
existing rate is not alleged; hence the difference cannot
be computed; but probably it was intended to require
payment of only half of the amount of the reduction, but
it is not so stated.   Neither does it fix the time within
which it is to be performed, but includes all future reduc-
tions in rates.

2. The first ground of the demurrer is that there is a
nonjoinder of defendants; defendant insisting that the
contract is joint.   The same inaccuracy in the contract
appears as to the joint and several liability of the first
parties.   The first obligatory clause is that they promise
to pay to the second party one-half the difference between
the existing rates and the reduction in freight on all the
grain raised by all of the first parties—clearly a joint
promise to pay the liability created by the contract.   But
the next clause is that they, and each of them, agree to
make such payment, thus clearly making it a joint and

several promise; each of the signers binding himself to pay the whole liability. Before the contract was signed, the last clause was inserted, which limits their liability by stating in substance that each shall be liable for one-half of the difference between the old rate and the reduction on his own crop only, thus making it a several contract, and not joint. In construing such a contract, it should be taken by the four corners, and the intent of the signers gathered therefrom, if it is possible to do so, giving due consideration to every part thereof. In *Lachmund* v. *Lope Sing*, 54 Or. 106, 111 (102 Pac. 598, 600), it is said, that "the contract must be construed to effect the intention of the parties as gathered from the entire instrument; and, if there are repugnant clauses, they must be reconciled, if possible. The intent, and not the words, is the essence of every agreement, if it can be ascertained therefrom." No layman could read this contract with any other understanding than that one signing it would be liable only for the amount computed on his own crop; and it is our duty to construe it as it was intended by its signers, if possible to do so without doing violence to any of its terms. This last clause is not, as counsel for defendant urges, a subsequent agreement among the parties of the first part alone; but it is a part of the contract "by and between the parties hereto," and we conclude that it is a several contract.

3. However, to determine what is the effect of the contract is a more difficult question. Is it so definite as to the undertaking of Peebler as to make it enforceable against him? It does not bind him to do any definite or specific thing, so that he was not liable thereon to the first parties, either in damages for nonperformance or in a suit for specific performance. There was no mutuality of obligation. The principal undertaking on his part is to agitate for a reduction in freight rates. What that might contemplate is not specified, and is not the subject

of proof, nor capable of specific performance.     Other things to be done by him, mentioned therein, are only at his own option, as he may deem necessary and proper.

4. Every contract must be definite and certain as to the terms to be performed by either party, and, if it is so uncertain and ambiguous that the court is unable to collect from it what the parties intended, the court cannot enforce it; and since there is no obligation there is no contract.   If the contract in any case is so indefinite as to make it impossible for the court to decide just what it means, and fix exactly the legal liability of the parties, it cannot result in an enforceable contract.   9 Cyc. 248. To the same effect are Pollock, Contracts, 48; *Fairplay School Township* v. *O'Neal,* 127 Ind. 95 (26 N. E. 686) ; *Barton* v. *Spinning,* 8 Wash. 458 (36 Pac. 439) ; *Marble* v. *Standard Oil Co.,* 169 Mass. 553 (48 N. E. 783).

The contract by its terms was intended to bind the farmers to pay without any consideration moving to them, as they promise to pay "whether the said reduction shall hereafter be voluntarily made by said transportation lines conveying from said territory, or the said reduction in said rates shall result from the agitation set on foot by the said party of the second part, his agents, servants and employees, or from proceedings instituted by the said party of the second part for such reduction or from any other cause."   This clause of the contract alone indicated bad faith on the part of Peebler—an attempt to create a liability on the part of the farmers without obligation on his own part.   The contract is not mutual, and the promise of defendant to pay is without consideration, and is void.

The judgment is affirmed.                    Affirmed.

Sig. 7

Decided June 22, 1911.

## ON PETITION FOR REHEARING.

[115 Pac. 1122]

Opinion by MR. CHIEF JUSTICE EAKIN.

By the petition for a rehearing it is contended that the contract was fulfilled on the part of plaintiff and that, the conditions being fulfilled, defendant cannot question its validity. But the fallacy of plaintiff's position is in assuming that the contract provides for the doing of some specific acts, and that the acts so contracted for were performed by plaintiff. As held in the opinion, the contract does not specify anything definite to be done. If the complaint alleged generally that plaintiff performed all the conditions of the contract, which would be a sufficient allegation of performance, it could not aid his pleading, as it cannot be known what conditions are to be performed; and the contract is not aided by an allegation that he did a great many things, the court being unable therefrom to say that such acts were the acts specified in the contract. Defendant cannot be required to accept the pretended performance alleged in the complaint as the fulfillment of the contract. The contract is void for indefiniteness.

Motion denied.        AFFIRMED: REHEARING DENIED.