Argued March 5, decided March 11, rehearing denied May 20, 1913.

## WALKER v. WARRING.

(130 Pac. 629.)

**Appeal and Error—Trial by Court—Findings—Evidence.**

1. On appeal, in an action at law tried before the court without a jury, the Supreme Court will examine the evidence only to ascertain if there is any competent evidence to support the findings.

**Appeal and Error—Findings—Evidence.**

2. Where, in an action for the price of nursery stock sold under a contract which did not fix the price of plum trees, various lists of

prices of trees of exactly the same size and similarly named were put in evidence as having been furnished with the stock, a finding fixing the price of the plum trees at the same rate as mentioned in the contract for prune trees could not be disturbed on appeal, on the ground that it was sustained by no evidence.

Sales—Contract—Delay in Making Payments—Forfeiture of Payments.

3.  A contract for the sale of nursery trees provided that the buyer should, in the fall, advance so much per thousand buds, and in the next spring advance a like amount for grafting all trees not previously budded, the amount so paid "to be deducted from the bill at the last delivery of stock," and also provided that if the payments therein provided for were not made payments theretofore made could be forfeited. *Held,* that, the contract being an entirety, a mere delay by the buyer in making payments, without any conduct indicating an intent to abandon the contract, did not authorize the seller to declare a forfeiture of the advance payments and to refuse to credit such payments on the account for the trees delivered.

[As to the rate that a rescission of sale by buyer must be *in toto,* see note in Ann. Cas. 1912A, 660.]

From Marion: PERCY R. KELLY, Judge.

Statement by MR. JUSTICE BEAN.

This is an action by W. W. Walker, Newton Walker, D. C. Walker, and Henry Goode, doing business under the firm name and style of Marion County Nurseries, W. W. Walker & Co., Proprietors, against J. D. Warring and Capital City Nursery Co., for money. The cause was tried before the court without a jury. From a judgment in favor of plaintiffs, defendants appeal.

The first cause of action is for the recovery of $3,262.26 on a contract entered into between plaintiffs and defendant J. D. Warring, on October 30, 1909, the payments to become due on the contract being guaranteed by the defendant Capital City Nursery Company, a corporation. The contract provided, among other things, for the sale and delivery by plaintiffs, doing business under the firm name of Marion County Nurseries, W. W. Walker & Co., Proprietors, to J. D. Warring, or his order, of all trees that might be grown from all seedlings then in the nurseries of Walker &

Co., the parties of the first part, which were budded during the season of 1909, or to be grafted in the spring of 1910. It was stipulated by the contract that the trees should be carefully cultivated and grown; and that they should be dug and graded at such times and in such quantities as the second party might direct during the fall of 1910 and the spring of 1911. The contract also made provisions for the manner of preparation for shipment, and for the delivery of the trees at the City of Salem, Oregon. It was agreed that Walker & Co. should grow such varieties of stock as the purchaser might direct, provided that such scions or buds could be procured. The party of the second part promised to advance four dollars per thousand buds on November 6, 1909, less $300 advanced on the contract at the time of its execution. The prices to be paid for the trees known as the 1910 crop were as follows:

| | | |
|---|---|---|
| Apples, | 4 to 6 ft., 7 ct. each; | 3 to 4 ft., 3½ ct. each. |
| Cherry, | 4 to 6 ft., 10 ct. each; | 3 to 4 ft., 5 ct. each. |
| Pear, | 4 to 6 ft., 9 ct. each; | 3 to 4 ft., 4½ ct. each. |
| Peach, | 4 to 6 ft., 8 ct. each; | 3 to 4 ft., 4 ct. each. |
| Apricot, | 4 to 6 ft., 9 ct. each; | 3 to 4 ft., 4½ ct. each. |
| Almond, | 4 to 6 ft., 9 ct. each; | 3 to 4 ft., 4½ ct. each. |
| Prune, | 4 to 6 ft., 6 ct. each; | 3 to 4 ft., 3 ct. each. |

Gooseberry and currants No. 1, 2½ ct. each.

The party of the second part further agreed to pay four dollars per thousand for grafting (during the spring of 1910) of all trees not previously budded, payment to be made on April 1, 1910. The balance of the contract price for trees was to be paid one half in cash at the time of delivery, and one half thereof on or before 60 days after such delivery of each shipment as ordered during the life of the contract.

The contract contained the following clause: "It is further agreed and understood by and between the parties hereto that time shall be of the essence of this

contract, and if the payments herein provided for are not made in accordance with this agreement, that said agreement shall be null and void and the payments theretofore made be forfeited at the option of the parties of the first part." And also: "It is further agreed and understood by and between the parties hereto that in the event of loss or damage to the stock herein contracted through causes beyond the control of the parties of the first part, and they are unable to deliver the stock as herein set forth to the said second party, then and in that case the amount advanced by the said second party as advance payment shall be refunded to said second party by said first parties hereto."

Plaintiffs allege that, pursuant to the terms of the contract, plaintiffs on and between October 18, 1910, and December 10, 1910, delivered to the defendants nursery stock of the total agreed value of the sum of $4,918.41; that no part thereof has ever been paid, except the sum of $900.65, paid on October 21, 1910, and the further sum of $755.50, paid on October 28, 1910, these payments being the first payments on the stock delivered in October, 1910, under the terms of the contract; that there is now due, unpaid, and owing to the plaintiffs from the defendants the full sum of $3,262.26; that the defendants have made only the first payment provided for by the contract on certain nursery stock delivered on October 18, 20, and 27, 1910, but have not made the second payment thereon as provided in the contract; that they have made no payment on the nursery stock delivered on December 9 and 10, 1910, although long since due, and payment thereof has been duly demanded; and plaintiffs hereby exercise their option under the contract to rescind the agreement as to further deliveries thereunder.

The second cause of action is for the reasonable value of 2,275 plum trees, four to six feet in height,

of the reasonable value of $136.50, and 28 plum trees from three to four feet in height, of the reasonable value of 84 cents, delivered December 10, 1910.

The several exhibits attached to the complaint contain itemized bills of the trees delivered in October and December, 1910, with the size, price, and amount stated. The dispute arose as to the December delivery. Defendants by their answer deny the second cause of action, and for answer to the first cause of action aver that defendants have kept and performed all the terms and conditions of the contract on their part; that they have paid $2,587.11, and have offered to pay the additional sum of $665.50; that plaintiffs have failed to perform all the terms and conditions of the contract on their part, specifying that the trees were not properly cultivated and cared for, and that they were not delivered as directed by defendants or according to the contract, to defendants' damage in the sum of $3,263; that the trees shipped during the month of December were shipped upon the express request of plaintiffs to store the trees with the defendants until required by the latter for the deliveries in the spring of 1911, claiming that payment therefor was not due under the contract until the spring of 1911.

MODIFIED : REHEARING DENIED.

For appellants there was a brief and an oral argument by *Mr. Alva O. Condit.*

For respondents there was a brief, with oral arguments by *Mr. Myron E. Pogue* and *Mr. Woodson T. Slater.*

MR. JUSTICE BEAN delivered the opinion of the court.

It appears that plaintiffs, upon this claim being made, informed defendant Warring that he thereby

forfeited the remainder of the 'contract. Plaintiffs then commenced this suit, alleging that they exercised their option to rescind their agreement as to further deliveries thereunder, claiming a forfeiture of advances for budding and grafting to the amount of $930.66. Defendants contend that this amount should be credited as payment for the trees delivered. Evidence was introduced by the respective parties tending to support their respective claims.

1. It is urged by defendants that this court should re-examine the facts, the cause having been tried by the court without a jury, because of the lengthy accounts of the various shipments of trees.

In the trial of a cause by the court without a jury, the judge acts as a jury, and the findings of fact take the place, and are to the same effect, as the verdict of a jury. Under Article VII, Section 3, of the Constitution, as amended November 8, 1910 (Laws 1911, p. 7), no fact tried by a jury shall be otherwise re-examined in any court of this state, unless the court can affirmatively say there is no evidence to support the verdict. In an action at law tried before the court without a jury, the findings will not be disturbed if there is any competent evidence to support them: *Flegel* v. *Koss,* 47 Or. 366 (83 Pac. 847); *Astoria R. R. Co.* v. *Kern,* 44 Or. 538 (76 Pac. 14); *Courtney* v. *Bridal Veil Box Factory,* 55 Or. 210 (105 Pac. 896).

It is contended by counsel for defendants that these authorities have no application to this case, for the reason that the opinions were rendered under the law as it stood before the constitutional amendment of 1910. The same rule has been applied since the constitutional amendment: See *Sun Dial Ranch* v. *May Land Co.,* 61 Or. 205 (119 Pac. 758, 763).

Upon an appeal to this court in a case so tried, the court will examine the evidence only to the extent of

determining if there is any competent evidence to support the findings, and will not review the weight or sufficiency of the evidence: *Seffert* v. *Northern Pac. Ry. Co.,* 49 Or. 95 (88 Pac. 962, 13 Ann. Cas. 883).

2. It is urged by counsel for defendants that there is no evidence tending to show the reasonable value of the trees mentioned in the second cause of action. It seems that this claim was pleaded separately, for the reason that the exact kind of trees was not described in the contract, nor the price fixed. The contract, however, did provide that the plaintiffs should grow such trees as the defendants desired; therefore the only controversy that can possibly arise is as to the price. At the time of the delivery plaintiffs furnished defendants with a statement of the trees, containing description and price, to which no objection appears to have been made. The court had before it various lists of prices of trees of exactly the same size, similarly named, and it apparently found that the plum trees were charged at the same rate as the prune trees mentioned in the contract. The price charged seems to have been the wholesale price. We cannot say that there was no evidence before the court showing the reasonable value of these trees.

The contention of the defendants is that the December shipments of trees were made by plaintiffs for storage, and that it was agreed that they should not be paid for until the spring of 1911. The trial court found, and the evidence strongly tends to show, that no such agreement was made. The contract itself controverts this proposition. It does not contemplate that the plaintiffs were to ship these trees. They were to be delivered at Salem, and there is testimony to show that they were so delivered and accepted by the defendants. It appears that in the evening after shipping one of the carloads the plaintiffs requested

payment for one half of the shipment, and defendant
Warring informed them that it was too late to make the
payment that evening, as the banks were closed.  On
the following mórning Warring claimed that the pay-
ment should not be made until the time for the de-
liveries in the spring of 1911.

The controversy is partially due to the fact that as
soon as the contract was executed defendant Warring
sold the trees described in the contract to the Oregon
Nursery Company.  He states in his testimony that
the business was all to be done through the Capital
Nursery Company and himself.  He repudiates the au-
thority for making the shipments in December and
denies the authority of one Frederick, who received the
trees that were shipped in December, together with
those that had theretofore been shipped.  It does ap-
pear, however, that he knew of the delivery after the
trees had been received by Frederick for the defend-
ants, and after the shipments had been made, and
offered no objection to the same.  It appears that
Frederick was authorized to act for defendants, and
was paid for this service by the Capital City Nursery
Company.

3. It is further claimed by defendants that the ad-
vances made should be credited in payment for the
trees, and that the same were not forfeited under the
terms of the contract.  It is contended by counsel for
plaintiffs that, under the authority (*Lachmund* v. *Lope
Sing*, 54 Or. 106 (102 Pac. 598), all of the advancements
made pursuant to the contract were forfeited.  This is
the main question in the case.

When payment of the price is to be made in advance
of or concurrent with delivery, it is of the essence of
the contract; and a failure to pay is such a breach of
the contract as will justify a rescission.  Where de-
livery is made in installments, a failure to pay for an

installment delivered within the time specified in the contract is ground for rescission. But the conduct of the purchaser must in all such cases be such as to show an intent to abandon the contract: *Monarch Cycle Mfg. Co.* v. *Royer Wheel Co.,* 105 Fed. 324 (44 C. C. A. 523); *West* v. *Bechtel,* 125 Mich. 144 (84 N. W. 69, 51 L. R. A. 791). And especially is this true when the contract of sale is entire: 35 Cyc. 133, 134.

There can be no question but that the contract in the case at bar is entire. In the case of *Lachmund* v. *Lope Sing,* 54 Or. 106 (102 Pac. 598), it will be noticed that there was an entire failure to perform the contract on the part of the buyer, differing from the case at bar.

As will be noticed by the pleadings, the advances were made for budding and grafting trees to be raised for the crop of 1910. Several shipments of the trees were delivered to defendants under the contract. These advances were made for the purpose of enabling the plaintiffs to properly propagate the trees. During the fall of 1910 the defendants were urging rapid delivery of the trees, presumably for sale that season, which request, was, perhaps, impossible for plaintiffs to comply with. There was a rise in the price of fruit trees after the contract was made. The controversy arose in regard to the time of making the payments for trees shipped at a different time than that specified in the contract, pursuant to an arrangement between the parties, wherein the misunderstanding as to the time of payment arose. The conduct of the defendants was not such as to show an intent to abandon the contract. There was no declaration made by defendants to that effect. There was merely delay in making payments.

In the case of *Cherry Valley Iron Works* v. *Florence Iron River Co.,* 64 Fed. 569 (12 C. C. A. 306), the facts

were very similar to the case under consideration. In that case the defendant contracted to sell 10,000 tons of ore to plaintiff, to be delivered in seven equal parts in each of seven months, the price to be also paid in equal installments in the same months, for the sum of $37,500. The contract contained a stipulation that, if plaintiff failed to make any payment for ten days after it was due, defendant should have the right to cancel the contract as to all ore not delivered at the time of such default. Plaintiff failed to make the fourth payment, and defendant refused to ship more ore until the same was made. No more payments were made, and no more ore shipped. Judge Severens, in delivering the opinion, as to the construction of this agreement, calling attention to the right of cancellation for nonpayment for partial deliveries, said: "The contract being entire, as soon as the parties had entered upon its performance by partial delivery and payment the mere failure of the vendee to make the subsequent payments would not, of itself, absolve the vendor from proceeding with the deliveries. It may be that a downright refusal to make payment, or other equivalent conduct evincing a purpose to renounce the contract, would entitle the other party to treat the contract as abandoned, and relieve him from the obligation to proceed further in its execution."

Mr. Justice BOYCE, in the case of *Johnson Forge Co.* v. *Leonard,* 3 Penne. (Del.) 342, at page 349 (51 Atl. 305, at page 308; 57 L. R. A. 225, at page 228; 94 Am. St. Rep. 86, at page 92), of the opinion, said: "While it is quite impossible to lay down any absolute rule for guidance in all cases of this character, under the varying facts and circumstances of the particular case, yet, in our opinion, the rule that will best promote the important commercial interests involved in contracts of this nature, and one that will work out the most

beneficial results in accordance with reason and justice, is that if a default by one party in making particular payments or deliveries, except in cases of neglect, omission, or inadvertence, is accompanied with an announcement of intention not to perform the contract upon the agreed terms, or if, in the language of the court below, the default is accompanied with a deliberate demand, 'insisting upon new terms different from the original agreement,' the other party may treat the contract as being at an end"—citing many authorities.

Under a contract for the sale of personal property, the nonpayment of the price or nondelivery will not, of itself, ordinarily be sufficient to warrant a rescission, yet, under the particular facts and circumstances of the case, such a default may be evidence of an intention to no longer be bound by the agreed terms of the contract.

A careful consideration of the whole contract and the circumstances connected therewith leads us to believe that the clause as to the forfeiture of the payments, above quoted, refers particularly to a default in the advancements for budding and grafting. The stipulation that "the *balance* contract price for trees, to be paid one half in cash at time of delivery, and one half thereof on or before 60 days after such delivery," indicates that the four dollars per thousand to be advanced should be credited on the price of each delivery. *Balance* of the contract price does not mean the whole price. The following clause, "the amount so paid is to be deducted from the bill at the last delivery of stock," which was inserted in the contract immediately after the reference to the $300 advancement, must have been intended to refer to that amount. This is the only construction that would give any effect to both clauses. The contract is somewhere ambiguous in this respect. We think, however, that, within the

meaning of the contract, the last delivery was the last one made in December.

While the trial court did not make any specific finding as to the advancement made pursuant to the contract, there is no dispute in regard to the fact relating thereto. We think that, under the terms of the contract, there was error in not crediting the advancements made by defendants, amounting to $930.66. There was no competent evidence to support a finding to the contrary.

The cause will, therefore, under the provisions of Article VII, Section 3, of the Constitution, be remanded to the lower court, with directions to credit defendants with that amount and enter judgment for the balance. With this modification, the judgment is affirmed.

MODIFIED: REHEARING DENIED.