Argued January 3, reversed with instructions July 3, 1968

## LITHIA LUMBER COMPANY, *Appellant and cross-respondent, v.* LAMB ET AL, *Respondents and cross-appellants.*

443 P. 2d 647

*Frank A. Bauman,* Portland, argued the cause for appellant and cross-respondent. With him on the briefs were Stanley C. Jones, Jr., and Jones and Reeder, Medford, Donald H. Pearlman and Keane, Haessler, Bauman and Harper, Portland, and Alister McAlister, San Jose, California.

*A. Allan Franzke,* Portland, argued the cause for respondents and cross-appellants. With him on the briefs were Ridgway K. Foley, Jr., Thomas M. Triplett, and Mautz, Souther, Spaulding, Kinsey & Williamson, Portland.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

GOODWIN, J.

Plaintiff in this action for breach of contract recovered a judgment for $1,740,000, but appeals from

the several concurrent judgments against plaintiff which allowed interest upon certain counterclaims. The defendants also appeal.

This is another stage in litigation that has been proceeding for several years between Lithia Lumber Company, Inc., a lumber manufacturing corporation, on the one side, and R. Drew Lamb and Zelma C. Lamb, husband and wife, as individuals; Magnolia Lumber Corporation, Inc., a corporation; and Magnolia Lumber Sales Company, a partnership, on the other side. For a related mortgage foreclosure, see *Magnolia Lbr. Corp. v. Lithia Lbr. Co.*, 241 Or 62, 65, 404 P2d 188, 190 (1965). See, also, *Skerry v. Lamb*, 248 Or 147, 432 P2d 792 (1967).

The plaintiffs third amended complaint sought damages against the defendants jointly and severally in the sum of $4,114,127.19. The jury, after trying the case from May 5 to July 10, 1964, returned a verdict for $1,740,000 in favor of the plaintiff, and was directed to find for the defendants the following amounts upon the various counterclaims: to Magnolia Lumber Corporation, $404,602.48; to Magnolia Lumber Sales Company, a partnership, $447,552.26; and to R. Drew Lamb and Zelma C. Lamb, $36,364.39.

The plaintiff's appeal asserts that the trial court erred in entering judgment against the plaintiff for interest on the counterclaims. The plaintiff conceded that the principal sums were due the defendants. The assignments of error assert that, because the defendants' pleading did not pray for interest, the jury could not have allowed interest. If the jury could not have awarded interest, plaintiff contends, it was error for the court to allow interest.

Although the dates from which interest could be computed were not entirely clear, interest was pay-

able under ORS 82.010(1) (a). Whether by design or otherwise, however, the defendants' counterclaim did not mention interest. The trial court withdrew the matter of interest from the jury, and interest was accordingly omitted from the verdict forms prepared by counsel.

After the verdict, the court invited briefs and argument on the issue of interest. The court employed a rule used in equity cases and decided, as a matter of law, that the defendants were entitled to interest at six per cent from the date of the last entry in each account even though interest had not been demanded in the pleadings.

██ If the counterclaim had been part of a suit in equity, the ruling would have been correct; there is no need to demand interest in order to have it included in a decree. *Camas Logging Co. v. Haskins et al,* 221 Or 182, 192, 349 P2d 852 (1960). In actions at law, however, our statutes have been construed to require a pleading foundation for any sum included in a judgment, whether or not the asserted right to recover arises from a statute or from another source. ORS 16.210(2)(c). *State Highway Com'n v. Deal et al,* 191 Or 661, 683, 233 P2d 242, 252 (1951); *Southern Pac. Co. v. Oregon etc. Assn.,* 127 Or 364, 272 P 281 (1928); *Obermeier v. Mortgage Co. Holland-America,* 123 Or 469, 259 P 1064, 260 P 1099, 262 P 261 (1928); *Ferguson v. Reiger,* 43 Or 505, 73 P 1040 (1903). Accordingly, upon the plaintiff's appeal, the judgment below must be modified to strike out interest accruing prior to July 15, 1964, the date the judgment was entered. Interest after July 15, 1964, is computed upon the judgment rather than upon the accounts.

██ Turning to the cross appeal, we find that the

448

judgment entered upon the plaintiff's asserted contract claim for damages likewise cannot stand. The third amended complaint was drawn upon the theory that the defendants, jointly and severally, are all liable under a single contract, each in precisely the same manner, for the same reasons, and in the same amount, to the plaintiff. This theory, when employed in a tort action, is expressed in the general rule that where the several wrongs of numerous tort-feasors all combine to injure the plaintiff the law will treat all the wrongdoers as jointly and severally liable for the full amount of the plaintiff's damages. The theory of joint and several liability, however, applies to contracts only when the contracts themselves, expressly or by implication, impose joint and several liability. See *Gaines v. Vandecar,* 59 Or 187, 115 P 721, 115 P 1122 (1911). The argument that the contracts in the case at bar imposed such liability did not find support in the evidence. A timely motion for a judgment of involuntary nonsuit was made and should have been allowed.

The plaintiff had entered into a lease and mortgage as well as separate contracts with three separate entities. Mr. and Mrs. Lamb controlled the corporation and were two of the partners in the defendant partnership, but no argument was made that these entities should be disregarded. The contracts expired at various times and dealt with separate subjects. One contract allegedly required the defendant corporation to advance working capital and to perform certain services; another allegedly required the defendant partnership to advance capital and to use its best efforts to sell the plaintiff's output; a third contract was alleged to be an undertaking by all three sets of defendants to sell timber to the plaintiff. This last document was signed by all defendants, but since the dif-

ferent defendants owned different parcels of timber their liabilities, if any, were several.

There was substantial disagreement concerning the duties, if any, which the various defendants undertook to perform under the alleged contracts. But there can be no doubt, even after examining some 5,316 pages of transcript, and documentary exhibits of commensurate volume, that the contracting parties are liable only severally, if at all, for the nonperformance of any specific contractual duties which each party severally may have undertaken to perform.

■ Unfortunately, the complaint did not reveal on its face that the plaintiff was attempting to join several causes of action against discrete parties. Under ORS 16.260(5), such a revelation would have made the complaint subject to a demurrer, since each cause of action did not affect all the defendants. *Hayden v. Pearce,* 33 Or 89, 52 P 1049 (1898).

The defendants attempted to reach one suspected defect in the complaint by a demurrer asserting that the complaint had joined tort causes of action with contract causes of action. The complaint had not literally joined tort and contract causes of action, but the pleading may have been drawn with the tort theory of joint liability in mind. In any event, the plaintiff succeeded in convincing the trial court that no torts were involved, and the demurrer was overruled.

The plaintiff proceeded, once past the demurrer, to introduce evidence of three separate contracts purporting to bind the various defendants to their respective separate and distinct obligations. Only one of the three contracts was signed by all the parties. Plaintiff contended, in justification of this procedure, that all the contracts together added up to a single transaction. The evidence did not prove a single trans-

action, much less any foundation for holding the several defendants to be jointly liable.

The error in submitting to a jury a single demand for damages for breach of contract against different defendants, all of whom had different obligations under the various contracts, should have been obvious. *Franklin v. Ferguson et al.,* 112 Or 641, 229 P 683, 229 P 1119 (1924); *Gaines v. Vandecar,* supra; *Hayden v. Pearce,* supra.

The common-law and Oregon rule against joining in a single action contract causes against several defendants who are not jointly liable has been criticized as technical, and such joinders are allowed under some modern systems of pleading. See Clark, Code Pleading § 67 (2d ed 1947). (In such systems, however, the pleadings play only a preliminary role in making up the issues.) The instant case is an example of the kind of confusion the Oregon rule for civil pleading was intended to minimize. Here a jury, for two months, was subjected to a mountain of evidence in a form that no jury could possibly relate to the specific contractual liability, if any, of each of the several defendants.

While none of the 129 assignments of error in the brief on the cross appeal specifically challenges a refusal to direct a verdict, error has been assigned to the refusal to give certain requested instructions which, if given, would have resulted in directed verdicts in favor of each of the defendants separately. A motion for a directed verdict, however, should have been made, as it would have forced the trial court to rule on the sufficiency of the evidence of joint liability. A request for a peremptory instruction may, for certain purposes under ORS 18.140, be treated as a motion for a directed verdict. The practice is, however, disfavored, and should be limited to the situation in which it has been

countenanced. See *German v. Kienow's Food Stores,* 246 Or 334, 425 P2d 523 (1967). In the case at bar, there is no reason to treat requested instructions as a motion for a directed verdict. A proper motion should have been made.

The plaintiff's failure to prove that the defendants had entered into one contract imposing joint and several liability had been challenged by the motion for a nonsuit, and the point was renewed on a motion for a new trial. The error in refusing to grant the nonsuit thus was preserved and is a sufficient basis for reversal.

The judgment against the defendants is reversed with instructions to enter a judgment of involuntary nonsuit for the defendants. The judgments in favor of the respective defendants on their respective counterclaims are affirmed in the sums entered below, except that in each judgment the interest prior to the date of July 15, 1964, must be stricken.

Reversed with instructions.