Argued March 12, reversed March 26, rehearing denied June 4, 1929.

## COURTEEN SEED CO. *v.* G. B. ABRAHAM.

(275 Pac. 684.)

428

For appellant there was a brief and oral argument by *Mr. Oscar Hayter.*

For respondent there was a brief over the name of *Mr. B. A. Kliks,* with oral arguments by *Mr. Kliks* and *Mr. Paul A. Sayre.*

BROWN, J.—The defendant assigns error of the court in overruling his motion for nonsuit in and by which he asserts that the evidence fails to show that defendant ever made a binding offer to plaintiff to sell clover seed.

■ Contracts in general are reached by an offer on the one side and acceptance on the other: 1 Page on the Law of Contracts, § 74. So it becomes necessary to determine whether the defendant actually offered to sell the clover seed to the plaintiff corporation, and whether it was defendant's intention that contractual relations should exist between them on plaintiff's acceptance.

The writing upon which the plaintiff relies to show an offer to sell is a telegram sent by defendant to plaintiff on October 8, 1927, which reads:

"I am asking 23 cents per pound for the car of red clover seed from which your sample was taken. No. 1 seed, practically no plantain whatever. Have an offer 22–¾ per pound, f. o. b. Amity."

Plaintiff's acceptance of the alleged offer reads:

"Telegram received. We accept your offer. Ship promptly, route care Milwaukee Road at Omaha."

■■ A contract should be construed to effect the intention of the parties thereto, as gathered from the entire writings constituting the contract. It is this intent that constitutes the essence of every contract. *Lachmund* v. *Lope Sing,* 54 Or. 106, 111 (102 Pac. 598); *Gaines* v. *Vandecar,* 59 Or. 187 (115 Pac. 721, 1122). Giving due consideration to every word contained in the defendant's telegram to plaintiff, we are not prepared to say that that telegram constituted an express offer to sell. It would be poor reasoning to say that the defendant meant to make the plaintiff an offer when he used this language:

"I am asking 23 cents per pound for the car of red clover."

That does not say, "I offer to you at 23 cents per pound the car of red clover," nor does it say, "I will sell to you the carload of red clover at 23 cents per pound." The writer of the telegram used the word "offer" with reference to some other person when he concluded by saying:

"Have an offer 22-¾ per pound, f. o. b. Amity."

Each of the words "offer" and "asking" has its meaning; and we cannot assume that the writer of the telegram meant to use these words in the same sense, nor can we eliminate the word "asking" from the writing.

Now, going back to September 21, 1927, we find that defendant was then mailing out samples of clover seed to divers persons, each sample being inclosed in an envelope on the face of which appeared the following words:

"Red clover, 50,000 lbs. like sample. I am asking 24 cents per, f. o. b. Amity, Oregon.

"AMITY SEED & GRAIN WAREHOUSE,
"Amity, Oregon."

It will be noted that on the envelope the defendant used the language "I am asking." The plaintiff acknowledged receipt of the sample received by it, and advised the sender that it had accumulated quite a stock of clover seed and preferred to wait a while "before operating further." On October 4th following, owing to rainy weather, which brought about conditions not favorable for hulling the clover seed, the defendant, in search of buyers, wrote the plaintiff, and, on October 8th, plaintiff wired defendant as follows:

"Special delivery sample received. Your price too high. Wire firm offer, naming absolutely lowest f. o. b."

The defendant then wired in reply, that he was asking 23 cents per pound, and had received an "offer of 22–¾." This is the writing upon which the plaintiff rests its case.

■ It is laid down by eminent authority that information or invitation to negotiate does not constitute an offer. Perhaps one of the most comprehensive discourses on this subject appears in 1 Page on the Law of Contracts; and, for its perspicuity and learning, we set out the following interesting excerpt from Section 84 thereof:

"The commonest examples of offers meant to open negotiations and to call forth offers in the technical sense are the advertisements, circulars and trade letters sent out by business houses. While it is possible that the offers made by such means may be in such form as to become contracts, they are often merely expressions of a willingness to negotiate."

In the following section, the author sets out in this language many illustrations of offers to negotiate:

"A statement by A to B of the price at which A will sell certain property is not equivalent to an offer by A to B to sell such property at such price; and B cannot, by accepting such alleged offer, hold A upon a contract. If A writes, asking if certain realty was for sale, and if so 'telegraph lowest cash price'; and B's reply quotes a price, and A replies agreeing to buy at that price; or A lists property with B for sale at a specified price, and B notifies A that he will take it at that price; or A writes to B, 'I should hate to see these lands go at $1,600 a piece net to me, but if you can find a buyer at that and get your commission above it, we will try to put the deal through,' and B accepts; or the owner of an interest in property telegraphs that he would not consider less than a certain amount therefor; or A asks B, the owner of certain property, if he will take a certain price therefor, and B attempts to accept such alleged offer and compel A to perform such contract; or A writes to B, 'We are authorized to offer Michigan fine salt in full carload lots of 80 to 95 barrels,' B telegraphs, 'Your letter of yesterday received and noted. You may ship me 2,000 barrels of Michigan fine salt as offered in your letter'; or where A wrote to B, 'We have a few jars that we can offer you at this time for immediate acceptance,' the price and place of delivery being given, no offer has been made in either case, and accordingly the attempted acceptance does not constitute a contract. If A telegraphs, 'Kindly advise us by wire Monday if you can use' a certain number of barrels at a certain price, and B replies, 'We accept your offer,' A has made no offer and B's acceptance cannot complete the contract."

The author then refers to and quotes from the leading case of *Nebraska Seed Co.* v. *Harsh*, 98 Neb. 89 (152 N. W. 310, L. R. A. 1915F, 824). In that case

the defendant wrote the plaintiff company the following:

"Lowell, Nebraska, 4–24–1912.
"Nebraska Seed Co.,
    "Omaha, Neb.
"Gentlemen:
"I have about 1,800 bushels, or thereabouts, of millet seed, of which I am mailing you a sample. This millet is recleaned and was grown on sod and is good seed. I want $2.25 per cwt. for this seed, f. o. b. Lowell.

"Yours truly,
"H. F. HARSH."

Upon receipt of this letter, the plaintiff wired defendant as follows:

"4–26–'12.

"H. F. Harsh,
    "Lowell, Nebraska.
"Sample and letter received. Accept your offer, millet like sample, $2.25 per cwt. Wire how soon can load.

"The NEBRASKA SEED Co."

On the same day the plaintiff wrote the defendant a letter confirming the wire, which stated, among other things:

"Have booked purchase of you 1,800 bushels of millet seed, to be fully equal to sample you sent us, at $2.25 per cwt. your track. Please be so kind as to load this seed at once and ship to us at Omaha. We thank you in advance for prompt attention.

"THE NEBRASKA SEED COMPANY."

The letter was received by defendant at Lowell in due course. After due demand and tender of the purchase price, the defendant refused to deliver the seed. An action followed, in which the alleged contract was set up. Defendant filed a demurrer to the

complaint, but his pleading was overruled. On trial plaintiff had verdict. Defendant appealed, and the Supreme Court of Michigan held that the language, "I want $2.25 per cwt. for this seed, f. o. b. Lowell," did not constitute an offer of sale; that the language was general, and, as such, might be used in an advertisement or circular addressed generally to those engaged in the seed business; and that such language was not an offer by which the defendant was bound, if accepted by any or all of the persons addressed. The court then quoted with approval from 9 Cyc. 278E.

In the case of *Moulton* v. *Kershaw et al.,* 59 Wis. 316 (18 N. W. 172, 48 Am. Rep. 516) the defendant wrote the plaintiff as follows:

"In consequence of a rupture in the salt trade, we are authorized to offer Michigan fine salt, in full carload lots of 80 to 95 barrels, delivered at your city, at 85 cts. per barrel, to be shipped per C. & N. W. R. R. Co. only. At this price it is a bargain, as the price in general remains unchanged. Shall be pleased to receive your order."

On the day the plaintiff received this letter, he wired the defendants of his acceptance and ordered 2,000 barrels of salt. In its disposition of the case, the Supreme Court of Wisconsin held that the letter upon which the plaintiff relied did not constitute an offer, for the reason that neither the word "sell" nor its equivalent was used therein.

There are many cases of record, the great majority of which seem to follow the doctrine announced in the cases hereinabove discussed. From a review of the decisions, and of the law governing the question at issue in the instant case, we are of opinion that the motion for a nonsuit should have been sustained.

This cause is reversed and remanded, with directions to enter a nonsuit.

REVERSED AND REMANDED.  REHEARING DENIED.

BELT and RAND, JJ., concur.

BEAN, J., dissents.