Argued and submitted August 12, affirmed December 8, 1982

SCHLOSSER,
*Appellant,*
*v.*
CLACKAMAS WATER DISTRICT,
*Respondent.*

(No. 81-2-20, CA A23419)

655 P2d 194

Greg McKenzie, Oregon City, argued the cause for appellant. With him on the brief were James C. Tait and Canning, Tait & McKenzie, P. C., Oregon City.

John W. Osburn, Portland, argued the cause and filed the brief for respondent.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

YOUNG, J.

## YOUNG, J.

This is an action for breach of contract. At the close of plaintiff's case in chief, the trial court granted defendant's motion for a directed verdict. Plaintiff appeals from the resulting judgment and contends that there was sufficient evidence to present a jury question whether defendant had made an offer to sell real property that was accepted by plaintiff, resulting in a contract. We affirm.

The scope of our review in determining the propriety of a directed verdict is that

"we must view the evidence in the light most favorable to plaintiff, and plaintiff is entitled to the benefit of every reasonable inference which may be drawn from the evidence." *Foster v. Schnell Refrigeration Co.,* 280 Or 411, 414, 571 P2d 497 (1977).

In early October, 1980, the Board of Directors of defendant (District) authorized the sale of a lot and building on St. Helens Road. When plaintiff learned that the property would be sold, he telephoned the District's general manager, Mr. Helton, to express an interest in buying it. Helton responded to the telephone call by a letter dated October 20, 1980, which reads in pertinent part:

"* * * * *

"At its regular meeting of October 9, 1980, the Clackamas Water District Board, by their motion, set the specifications on the sale of its property at 9010 S. E. St. Helens Road. They are as follows:

"The Board will accept bids on its property at its regular meeting of November 13th at 7:30 P. M. on the following basis.

| | |
|---|---|
| "Minimum bid acceptable | $160,000. |
| "Interest rate at | 12% |

"Length of contract - negotiable
"Property is free and clear
"Lot size - 72.5' x 264'
"Bordered on St. Helens Road, 90th & Clackamas Road
"Office Space - see attached map - 3220 sq. ft.
"Shop area - 2150 sq. ft.
"Blacktopped area - 7,630 sq. ft. Graveled - 6,525 sq. ft.

"This information is being given to only those parties who have shown a real interest.

"Inspection of the building may be made between 8:A.M. and 5:P.M., on any work day Monday thru Friday. Kindly call the undersigned for an appointment time. Any additional information we can provide, we will be happy to do so. Please call at 656-0668 and ask for the undersigned.

"(* * * * *)"

Attached to the letter was a floor plan of the building. The District sent the same letter to four other parties who had shown an interest in the property. Plaintiff, in preparing to bid, examined the property with the aid of other persons knowledgeable in real estate. He had also learned from Helton that the property had been appraised as having a value in excess of $200,000. On October 29, 1980, Helton wrote to plaintiff and the other interested parties:

"Please be advised that in my letter of October 20, 1980, it was not clearly stated that the bid on November 13, 1980 to the Clackamas Water District Board should be:

*"A Sealed Bid*

"Please correct our requirements letter accordingly."

Three bids were submitted and were opened at the District Board meeting on November 13, 1980. Plaintiff's bid of $171,100 was the highest, but the Board rejected all bids. The Board then proceeded to place notices in newspapers calling for an "invitation to bid." The published notice advertised a new bid opening on December 11, 1980, with the District reserving the right to reject any and all bids. Two bids were submitted; plaintiff bid $170,100 and A & A Drilling, Inc., bid $176,300. The Board accepted the higher bid. This action followed.

Plaintiff argues that the letter of October 20th was an offer to sell the property and that his high bid at the bid opening on November 13, 1980, was an acceptance of the offer. He concedes that if the letter was an invitation to make an offer (a bid), then plaintiff did not have the power to create a contract by submitting the highest bid.

Plaintiff contends that the letter is an offer, because it was sent to a select group of prospective buyers;

it contains words of promise, undertaking and commitment, *e.g.,* "sale of District property," "accept bid," and "Minimum bid acceptable" "$160,000"; and it contains definite terms.

Plaintiff relies on *Southworth v. Oliver,* 284 Or 361, 587 P2d 994 (1978), a proceeding in equity for a declaratory judgment. The case is distinguishable. There the defendant had contacted the plaintiff to discern his interest in buying the defendant's ranch. The plaintiff had expressed definite interest. Their discussions continued. The defendant wanted to inquire of the assessor about the market value of the ranch. The plaintiff needed to arrange financing, which he did, and he communicated that fact to the defendant. The defendant then sent to the plaintiff and other prospective buyers a letter that set out the market value of the ranch, which was the sale price, and the terms of the sale. The plaintiff accepted and claimed that a contract was formed. The court agreed and held that, in light of all the facts and circumstances, a reasonable buyer would have understood the letter to be an offer. In *Southworth,* there were extensive preliminary preparations and negotiations between the parties, and the letter held to be an offer did not use the term "bid."

■ The letter in this case states that the "Board will accept bid," and that the "minimum bid acceptable" is "$160,000." Because the letter seeks bids, it invites offers. This conclusion is consistent with the common understanding of the meaning of the word "bid."

> "A bid is a binding offer to make a contract." 10 McQuillin, *The Law of Municipal Corporations* § 29.65 (3d ed 1981).

*See also Black's Law Dictionary* 147 (5th ed 1979). This is particularly true in the context of public entities. In 1 Williston, Contracts 82, § 31 (3d ed 1957), it is stated:

> "Often tenders or bids are advertised for by public corporations, municipalities, counties, or states, or private corporations. The rules governing such bidding are analogous to the rules governing auction sales. That is, an ordinary advertisement for bids or tenders is not itself an offer but the bid or tender is an offer which creates no right until accepted."

Another author observes:

"The advertisement is not an offer; it is a *request for offers.* This is true even though it may be common practice to accept the best bid made." 1 A. Corbin, Contracts § 24, (1963).

■        A reasonable person would not have understood the letter to be an offer. It did not contain a promise to accept the highest bid or to sell the property for more ·than $160,000. The letter gave notice that the Board would not entertain a bid less than $160,000. The letter contains no words of promise, commitment or undertaking, *Southworth v. Oliver, supra,* 284 Or at 365; it provides, to use its own word, "information"[1] necessary for bidding. It solicited offers.

"It is laid down by eminent authority that information or invitation to negotiate does not constitute an offer." *Courteen Seed Cox v. Abraham,* 129 Or 427, 431, 275 P 684 (1929).

The trial court did not err in directing a verdict for defendant.

Affirmed.   ·

---

[1] Although the term "information" is not talismanic, *Southworth v. Oliver, supra,* 284 Or at 374, it is at least a fair characterization of a letter that invited bids.