Argued and submitted April 21, 1986, affirmed March 18, reconsideration denied
May 8, petition for review allowed June 16, 1987 (303 Or 534)

# TORRES,
*Appellant,*

*v.*

# PACIFIC POWER AND LIGHT,
*Respondent.*

## (L83-2014; CA A35226)

734 P2d 364

Robert J. Guarrasi, Eugene, argued the cause for appellant. With him on the brief was Malagon & Associates, Eugene.

William G. Wheatley, Eugene, argued the cause for respondent. With him on the brief was Jaqua, Wheatley, Gallagher & Holland, P.C., Eugene.

Before Richardson, Presiding Judge, and Rossman* and Deits, Judges.

DEITS, J.

Rossman, J., dissenting.

---

*Rossman, J., *vice* Newman, J.

**DEITS, J.**

Plaintiff appeals from the trial court's denial of his motions for directed verdict and to dismiss defendant's first affirmative defense of contributory negligence. We affirm.

Plaintiff's employer, Quality Fence Company (Quality), entered into a contract with defendant Pacific Power and Light (PP&L) to install a chain link fence around one of PP&L's substations. The installation work was done by plaintiff and two other Quality employes on September 8, 1981. The resident operator of the substation, a PP&L employe, met the crew when it arrived and acted as a "safety watcher" throughout the installation as required by Oregon's Occupational Safety and Health Code.[1] In the course of lifting a six-foot long metal tension rod overhead while attempting to thread it through a standing section of fence, plaintiff touched the rod to an energized bus bar that was approximately four feet over his head, and he was seriously injured by electric shock. At the time of the injury, the safety watcher was standing within three feet of plaintiff but did not see the injury occur because he had turned away from plaintiff just prior to the injury.

Plaintiff filed this action against PP&L.[2] The specific allegation of negligence relevant to this appeal states:

"Defendant, by and through its employees, representatives and agents was negligent in * * *:

"* * * * *

"5.   Failing to keep constant watch over Plaintiff while he was working in an area where motions or movements would violate specified clearances."

Plaintiff argues that defendant was negligent as a matter of law, because defendant's employe failed to comply with applicable safety rules, which require a safety watcher to maintain "constant watch" over persons under his observation. The pertinent rules provide:

"437-84-029 A qualified safety watcher shall be provided

---

[1] OAR 437-84-029. The regulations were adopted by the Workers' Compensation Department pursuant to the Safe Employment Act. ORS Chapter 654.

[2] Plaintiff did not also plead a claim for relief based upon statutory tort. *See Nearing v. Weaver,* 295 Or 702, 670 P2d 137 (1983).

whenever workers or equipment are required to perform work in areas where inadvertent motions or movements would violate specified clearances. The safety watcher's sole duty is to keep constant watch over persons under his observation and to warn them of danger."

"437-84-033 The foreman may act as the safety watcher providing his other duties do not interfere. Should the foreman, for any reason, find his attention distracted or leave the immediate vicinity, he shall either designate another qualified person as the safety watcher or order the work stopped."

At trial, the safety watcher was unable to explain why he had turned away, although he remembered that something had diverted his attention. At several points during the trial, plaintiff's attorney moved for a directed verdict on the basis that defendant was negligent as a matter of law, because plaintiff had proven a violation of the administrative rules and PP&L had failed to offer any evidence rebutting the presumption of negligence. The court denied the motions and submitted the case to the jury, which absolved PP&L of any liability. On appeal, plaintiff argues that the trial court erred in refusing to direct a verdict for him.

■ Under the doctrine of negligence *per se,* the violation of a statute or rule raises a rebuttable presumption of negligence if the violation causes an injury to a member of the class of persons meant to be protected and the injury is of a type which the statute or rule was enacted to prevent. *Resser v. Boise-Cascade Corp.,* 284 Or 385, 587 P2d 80 (1978); *Newport v. Moran,* 80 Or App 71, 721 P2d 465, *rev den* 302 Or 35 (1986). Once a violation is proven, the burden shifts to the person who violated the statute or rule to prove that he acted reasonably under the circumstances. *Resser v. Boise-Cascade Corp., supra; Reynolds v. Tyler,* 65 Or App 173, 670 P2d 223 (1983). If the action was reasonable, the violator's conduct can be found non-negligent despite the violation.

We conclude that plaintiff was a member of the protected class and suffered the type of injury which the rules were intended to protect against. The remaining issues are whether PP&L violated the rules and, if it did, whether there was evidence from which a jury could find it acted reasonably under the circumstances.

■ When reviewing the propriety of a trial court's ruling

on a motion for directed verdict, we view the evidence, including inferences which can reasonably be drawn therefrom, in the light most favorable to the party opposing the motion. *Brown v. J.C. Penney Co.*, 297 Or 695, 688 P2d 811 (1984); *Schlosser v. Clackamas Water District,* 60 Or App 617, 655 P2d 194 (1982). If the motion was denied and the moving party lost at trial, the denial will not be set aside unless there was no evidence from which the jury could have found the necessary facts. Or Const, Art VII (amended), § 3; *Brown v. J. C. Penney Co., supra.*

Whether the rules were violated depends to a large extent on the interpretation of the term "constant watch." Although we generally defer to an agency's interpretation of terms used in agency rules so long as the interpretation is within the ambit of the authorizing statute, in this case the agency has not provided any further definition of the term. It is our conclusion that, when viewed in light of the purposes of the rules, "constant watch" means a continuous and uninterrupted watch.

The other rule which is pertinent, OAR 437-84-033, concerns foremen who act as safety watchers. It provides that, when a foreman who is acting as a safety watcher is distracted or must leave the vicinity to attend to his other duties, he must order the work stopped until he can once again give his constant attention or designate a qualified substitute to act as safety watcher. A foreman who fails to stop the work or designate a substitute safety watcher would violate the regulation by failing to keep "constant watch." It logically follows that a non-foreman safety watcher who finds his attention distracted is not keeping a "constant watch."

In addition, the purpose of the rule requiring a safety watcher is to prevent severe or fatal injuries from electric shock. Safety watchers are only required in limited circumstances when specified clearances might be violated. *See* OAR 437-84-409 through OAR 437-84-476. Given the probable severity of injury that the rules are intended to prevent, the narrow range of circumstances in which a safety watcher is required and the strict nature of the duty, we believe that their purposes would be frustrated by a less demanding definition.

Applying our interpretation to this case, the safety watcher's conduct violated the rules as a matter of law,

because he did not keep a continuous and uninterrupted watch. The crucial inquiry then becomes whether there was any evidence from which the jury could find that, even if defendant's representative violated the rules, he had acted reasonably under the circumstances. We conclude that there was such evidence. The safety watcher admitted that he turned away from plaintiff for 30 to 60 seconds prior to the injury. He did not recall the specific reasons why he turned away, but he testified that he was distracted by some other activity at the plant:

"Q.　Am I correct right before the accident you were facing the transformers?

"A.　That is correct.

"Q.　Why were you looking there?

"A.　My attention was drawn to something and I cannot recall what it was.

"Q.　Actually, there was nothing that really drew your attention at that point in time; isn't that correct?

"A.　Any number of things could have drawn my attention because I was responsible for the plant. I was responsible for three men on the deck. It was my idea to know where all three were. I could see two. The change in the hum of the transformer would have drawn my attention. A bug in the generator would have drawn my attention. If someone were to drop a wrench on the deck it would have drawn my attention.

"Q.　Did any of those things occur to the best of your recollection?

"A.　I would say the best thing that could have caught my attention would be a bump in the generator if we were running a rough load.

"Q.　But you can't really recall today?

"A.　I cannot."

There was also evidence that, at the time when the safety watcher turned away, plaintiff was not holding anything that could contact the energized bus bar. Further, there was evidence that the safety watcher had warned plaintiff about the energized bar several times during the day. We conclude that there was sufficient evidence from which the jury could have found that defendant acted reasonably under the circumstances and, thus, the trial court's denial of the motion for directed verdict was proper.

Plaintiff also raises as error the court's failure to strike defendant's first affirmative defense, which alleges contributory negligence on the part of plaintiff. Because the jury found that defendant was not negligent, this assignment is moot.

Affirmed.

**ROSSMAN, J.,** dissenting.

The majority opinion heads down the right track up to where it correctly identifies the crucial question as being "whether there was any evidence from which the jury could conclude that, even if defendant's representative violated the regulations, he had acted reasonably under the circumstances." 84 Or App at 417. Suddenly, the majority appears to switch tracks. By finding evidence of reasonableness where the record is devoid of any such evidence, it commits an unfortunate legal derailment and—as a result—decides the case wrongly.

Granted, the safety watcher enumerated many kinds of happenings that "would have drawn [his] attention" away from plaintiff. However, he was at a total loss to recall or identify what actually did divert his mandated vigil at the critical moment. He offered nothing more than mere conjecture.

The problem is that the majority and defendant have misinterpreted the significance of certain testimony. The so-called evidence on which they apparently rely does not show—either directly or indirectly—reasonable conduct on the part of the safety watcher. For example, the point is made that the safety worker never left plaintiff and that, at the time of the incident, he was standing only three feet from plaintiff (which was apparently close enough to have the hair raised on the back of his head). I do not see what that testimony does for defendant. The safety watcher's duty pertained to the use of his eyes. Where his feet happened to be or where he was in relation to plaintiff does not explain why he was not watching plaintiff at the crucial moment.

Defendant also alludes to testimony that the safety watcher "was responsible for the plant as a whole" and that there were two other workers on the scene who also merited watching. Clearly, the number of workers to be watched is not

evidence of the watcher's reasonableness in not watching the person who actually gets jolted. In any event, the watcher admitted that he knew where the other two workers were and that neither one was in the immediate area of bus bars or energized equipment. As plaintiff indicates in his brief:

> "Ironically, throughout the entire workday the *only* area where any contact with the workers or the fencing material was possible was at the location where Plaintiff was jolted." (Emphasis in original.)

Under the administrative rule, the watcher's duty was to keep constant watch over plaintiff when he was situated directly underneath the high voltage bus bars, because in that work area inadvertent motions or movements could violate specified clearances. If "for any reason," he was unable to perform that duty, it was his responsibility—as the majority recites— "either [to] designate another qualified person as the safety watcher or order the work stopped." OAR 437-84-033. What *might* have been his reason for violating his duty to keep a continuous and uninterrupted watch is no evidence whatsoever that he acted reasonably. Possibilities do not carry the day for defendant.

Because of the absence of even a tiny granule of evidence from which a jury could conclude that defendant was not negligent, plaintiff is entitled to prevail on the disputable presumption of negligence. The trial judge clearly erred in not granting plaintiff's motion for a directed verdict. We should be reversing,[1] not affirming.

I also believe that a good argument could be made, in the light of the watcher's explicit responsibility under the rule to designate a substitute or to order the work stopped if he is

---

[1] Defendant suggests in its brief that my result would be tantamount to the imposition of strict liability. That is simply wrong. This is a typical *negligence per se* case, in which plaintiff must establish four things: (1) a violation of the rule; (2) resulting injury; (3) that plaintiff is in the class of persons intended to be protected; (4) and that the injury is in the class of risks intended to be avoided. As the majority correctly notes, once those matters are established, which the majority agrees has been accomplished here, a disputable presumption then arises in favor of a plaintiff. If the defendant wishes to avoid the consequences of the presumption, it must show that, despite its violation, it acted reasonably under the circumstances. This inquiry concerns the law of negligence and does not have anything to do with the concept of strict liability.

unable to maintain his watch "for any reason," that any conduct other than watching plaintiff would be unreasonable. Even if there were any evidence from which the factfinder could infer what the safety watcher was doing instead of keeping watch, I would hold that that evidence could not support a verdict for defendant. All of the possibilities that the majority and defendant suggest about what the watcher may have been doing, and why he may have been doing it, flounder on the same shoal: whatever else he did, he did not carry out the rule's requirement that he designate another safety watcher or order the work stopped. In effect, defendant relies on the very action which violated the rule as the basis for contending that the violation was reasonable under the circumstances. That is not the way the reasonableness defense to negligence *per se* works. To illustrate, a defendant who runs a red light and collides with the plaintiff's car can urge that his traffic violation was reasonable because his brakes failed, an oil slick prevented him from stopping, etc. However, he cannot argue that, *because* he ran the light, it was reasonable for him to collide with the plaintiff's car. Phrased otherwise, the fact of the violation cannot show that the violation or the injury it caused was reasonable. Even given the majority's and defendant's understanding that defendant proved anything, the most it showed was that its employe violated the rule.

I must respectfully dissent.