Argued and submitted November 17, 1986, reversed and remanded with instructions, otherwise affirmed July 22, 1987

# LEGGETT,
## *Respondent,*

*v.*

# FIRST INTERSTATE BANK OF OREGON,
## *Appellant.*

## (A8212-07487; CA A36637)

739 P2d 1083

James H. Clarke, Portland, argued the cause for appellant. With him on the briefs was Spears, Lubersky, Campbell, Bledsoe, Anderson & Young, Portland.

Richard C. Busse, Portland, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

**DEITS, J.**

Plaintiff filed this action against defendant, First Interstate Bank of Oregon, her former employer, alleging unlawful employment discrimination, invasion of privacy, breach of contract and wrongful discharge. The court ruled for defendant on the discrimination claim, and the jury decided the remaining claims in plaintiff's favor. Defendant appeals the judgment, raising only issues concerning the claims for invasion of privacy and wrongful discharge.

In October, 1976, plaintiff was employed by defendant in its Bankcard Division. She became a collector in 1977, making calls on delinquent account customers and contacting customers who had exceeded their credit limit. Plaintiff has a phobia about insects and spiders. Beginning in 1978, her co-workers would tease her by surprising her with rubber spiders, placing them on her chair or under papers on her desk. She usually reacted by jumping back and crying out, but occasionally she broke down in tears. Even though she asked her co-workers to stop, they did not. Plaintiff asked her direct supervisor, Thornbrugh, to stop the teasing, but it continued.

On July 29, 1980, one of plaintiff's co-workers dropped a rubber spider on her desk. She became hysterical and was forced to go home. She requested that, when she returned to work, she be placed under a different supervisor. When she returned to work in August, that was done. However, in October, she was again placed under Thornbrugh's supervision. When plaintiff returned to work, defendant referred her to Dr. Metzger, a clinical psychologist. Defendant paid for the first two visits and received a written report from Metzger on September 15. Plaintiff consented to that arrangement. She continued with Metzger as a private patient at her own expense.

In the fall of 1980, plaintiff was denied a promotion to a field position because of excessive absenteeism. She had twice been denied promotions during the summer for the same reason. She was told that she would have to improve her attendance before transferring out of the Bankcard Division and that immediate improvement was important to future promotions, increases in salary and, possibly, continued employment with the bank. In mid-October, she met with Derby, the head of personnel, who told her that, if she were to

have no absences for 90 days, he would endorse a transfer when an opening occurred. She had no full-day absences through February, 1981, but she did leave work on several occasions for medical appointments. On February 25, after unsuccessfully attempting to obtain permission to attend a February 27 function at her son's school, plaintiff went to see Derby. They discussed her absenteeism and her desire for a transfer, and he stated that he could not create a position for her. She became upset and started crying. Derby arranged for her to be taken home.

Kittinger, an employe assistance counselor for defendant, told Metzger about the situation. He recommended that plaintiff come to his office. Kittinger contacted plaintiff while she was at work and told her that Metzger wanted to see her. Metzger saw her on February 26 and recommended a two-week leave of absence. He wrote a letter to defendant, on behalf of plaintiff, in which he stated:

> "I have talked to Sue Leggett in my office on this date and found her to be suffering from a severe anxiety neurosis. At this time, she is complaining of weakness, fatigue, headaches and extreme levels of distress.
>
> "As a result of this examination, I would recommend that Ms. Leggett be given two weeks of sick leave beginning at once and that serious consideration be given to the possibility of a transfer of this employee to another department within the organization."

Randolph, head of the Bankcard Department, recommended that she be placed on medical leave or transferred from his department. He stated that no decision had been made to terminate her. She was given a two-week medical leave.

Derby met with Metzger on March 10. He was accompanied by Randolph and Grubbs, head of the Employee Assistance Program. Plaintiff had not provided a release to Metzger allowing him to speak with them. During the meeting, in response to Derby's questions, Metzger stated that a transfer would not resolve her problems and that plaintiff would not adversely react to termination. She was terminated on March 16, 1981. There was evidence that indicated that Metzger's statements and opinions concerning plaintiff's condition had changed throughout the course of their sessions as he learned more about her condition.

Plaintiff filed this action, including claims for unlawful employment discrimination on the basis of mental handicap, invasion of privacy by defendant's seeking and obtaining confidential information from Metzger, breach of employment contract and wrongful discharge. On the invasion of privacy claim, the jury awarded $10,000 for emotional distress, $27,000 for lost earnings and $150,000 in punitive damages. It awarded $27,000 in lost earnings for breach of contract. On the wrongful discharge claim, it awarded $10,000 for emotional distress, $27,000 in lost earnings and $50,000 in punitive damages.[1] The court entered judgment for general damages of $47,000 and punitive damages of $200,000.

Defendant first argues that the court erred in denying its motion for directed verdict on the claim for invasion of privacy. The tort of invasion of privacy by intrusion has been recognized by the Oregon courts. *McLain v. Boise Cascade Corp.*, 271 Or 549, 533 P2d 343 (1975); *Oliver v. Pacific Northwest Bell*, 53 Or App 604, 632 P2d 1295, *rev den* 292 Or 108 (1981). To prevail, a "plaintiff must show: (1) an intentional intrusion, physical or otherwise; (2) upon plaintiff's 'private affairs or concerns'; and (3) that the intrusion would be offensive to a reasonable person." *Oliver v. Pacific Northwest Bell, supra,* 53 Or App at 607. (Citations omitted.)

Defendant does not dispute that plaintiff has a privacy interest in her communications with Metzger. However, defendant argues that it had a legitimate interest in inquiring of Metzger regarding plaintiff's condition and the suitability of employment alternatives. *See Bratt v. Intern. Business Machines Corp.,* 392 Mass 508, 467 NE 2d 126 (1984). We agree that an employer does have a legitimate interest in determining an employe's condition to the extent that it relates to employment. That interest must be balanced against the nature and extent of the intrusion in deciding if an invasion of privacy has occurred.

In reviewing the propriety of a trial court's ruling on a motion for directed verdict, we view the evidence, including inferences that can reasonably be drawn from it, in the light

---

[1] Plaintiff was awarded $27,000 for lost earnings on each of her claims. The parties agree that she is entitled to be paid only once for that loss. Defendant does not appeal from the lost earnings' award for breach of contract.

most favorable to the party opposing the motion. *Brown v. J.C. Penney Co.,* 297 Or 695, 688 P2d 811 (1984); *Schlosser v. Clackamas Water District,* 60 Or App 617, 655 P2d 194 (1982). If the motion was denied and the moving party lost at trial, the denial will not be set aside, unless there was no evidence from which the jury could have found the necessary facts. Or Const, Art VII (amended), § 3; *Brown v. J.C. Penney Co., supra.* In this case, the jury could reasonably have found that defendant wrongfully and intentionally invaded plaintiff's privacy, that the intrusion would be offensive to a reasonable person and that the seriousness of the intrusion on plaintiff's privacy outweighed defendant's interest.

■ Defendant next argues that the court erred in declining to instruct the jury on the defense of conditional privilege as to its interview with Metzger. Conditional privilege, which is raised most frequently in defamation actions, has not been extended in most jurisdictions to invasion of privacy actions that do not involve publication. *Restatement (Second) Torts,* § 652G (1977); Prosser and Keeton, *Torts,* § 117, 868 (1984); *see Dietemann v. Time, Inc.,* 449 F2d 245 (9th Cir 1971); *see also Froelich v. Adair,* 213 Kan 357, 516 P2d 993 (1973). The privilege is intended to protect persons capable of providing information from liability for misinformation in situations where it is essential that true information be given to protect their interest or the interest of others. *Restatement (Second) Torts,* § 592A (1977) (note on scope of conditional privilege). That purpose would not be served in this case, because we are not concerned here with the dissemination and publication of information, but rather with the bank's gathering of information. The court did not err in refusing to give the requested instruction.

■ Defendant also asserts that the court erred in failing to instruct the jury on the issue of consent. Strictly speaking, consent is not a defense to invasion of privacy. Rather, *lack* of consent is an element of the tort, and there is no actionable invasion of privacy if the plaintiff has consented, the consent has not been revoked and the defendant has acted within the scope of the consent. Prosser and Keeton, *Torts,* § 117, 867 (1984); *see Castagna v. Western Graphics,* 38 Or App 403, 590 P2d 291 (1979).

■ The court's instructions on invasion of privacy

apprised the jury that plaintiff, as part of her claim, had to prove that defendant's agents acted without her consent. Although defendant's requested instruction would have provided the jury with more detail concerning the issue of consent, the instruction given was adequate. *Arp v. Kerrigan,* 287 Or 73, 597 P2d 813 (1979). The court did not err in failing to give the requested instruction.

■      Defendant contends that the court also erred in denying its motion to strike allegations of extreme emotional trauma and distress from plaintiff's claim for invasion of privacy, because plaintiff failed to present any evidence that such harm resulted from the alleged invasion of privacy. We agree. There was no evidence that plaintiff actually suffered emotional distress as a *direct* result of the invasion of privacy. *Restatement (Second) Torts,* § 652H, *comment a* (1977).

■      Defendant contends that the court also erred in denying its motion to strike, for lack of evidence, the allegation that plaintiff lost her job and employment earnings from the claim for invasion of privacy. The court was correct in denying that motion, because there was evidence from which the jury could have concluded that defendant's invasion of plaintiff's privacy was a factor in her termination.

■      Defendant's last issue concerning invasion of privacy is that punitive damages should have been stricken because the alleged wrongful conduct consisted of verbal communication and the Supreme Court has interpreted Article I, section 8, of the Oregon Constitution to bar punitive damages when harm has resulted from an abuse of speech only. *Wheeler v. Green,* 286 Or 99, 593 P2d 777 (1979); *see Hall v. The May Dept. Stores,* 292 Or 131, 637 P2d 126 (1981); *see also Lewis v. Oregon Beauty Supply Co.,* 302 Or 616, 733 P2d 430 (1987). Here, however, the conduct that the jury determined was wrongful was not defendant's agent's communication with Metzger, but rather defendant's act of garnering information from him. He was verbally informed of what information defendant was seeking and why it was being sought, but the gravamen of plaintiff's claim was the act of garnering confidential medical information. Garnering—be it through eavesdropping, stealing files or making a verbal request—is unprotected nonexpressive conduct and is not protected against an award of punitive damages. Moreover, even if

defendant's actions involved speech, defendant did not request an instruction limiting the jury's consideration to nonexpressive conduct. Because defendant's actions included nonexpressive conduct, we uphold the punitive damages award. *Lewis v. Oregon Beauty Supply Co., supra,* 302 Or at 629.

■ Turning now to the issues concerning the claim for wrongful discharge, defendant contends that the court erred in denying its motion for directed verdict because plaintiff did not prove that she was mentally handicapped and that there was no evidence that plaintiff was terminated for resisting harassment because of a handicap.[2] Generally, an "at-will" employment may be terminated by the employer or the employe at any time or for any reason, unless termination is prohibited by contract or statute. In *Holien v. Sears, Roebuck and Co.,* 298 Or 76, 689 P2d 1292 (1984), the court recognized an exception to that rule where an employe has been discharged in retaliation for resisting forbidden discriminatory harassment "while pursuing a right related to his or her role as an employe and the right is one of important public interest indicated by constitutional and statutory provisions and case-law." 298 Or at 90. In this case, plaintiff claims that she was discharged for resisting harassment because of a mental handicap in violation of ORS 659.425.[3] Even assuming that plaintiff's spider phobia was a "mental handicap" as the term is used in Oregon's Handicap Discrimination Act,[4] there is no

---

[2] Defendant also argues that the court erred in receiving Metzger's letter that referred to a Bureau of Labor finding of mental handicap and in failing to strike that same portion at the close of all the evidence as violative of an earlier motion in limine. In view of our disposition of the wrongful discharge claim, it is unnecessary to address those issues.

[3] ORS 659.425(1) provides:

"For the purpose of ORS 659.400 to 659.435, it is an unlawful employment practice for any employer to refuse to hire, employ or promote, to bar or discharge from employment or to discriminate in compensation or in terms, conditions or privileges of employment because:

"(a) An individual has a physical or mental impairment which, with reasonable accommodation by the employer, does not prevent the performance of the work involved;

"(b) An individual has a record of a physical or mental impairment; or

"(c) An individual is regarded as having a physical or mental impairment."

[4] ORS 659.400 provides, in part:

"(2) 'Handicapped person' means a person who has a physical or mental

evidence to support the conclusion that plaintiff was terminated for resisting harassment relating to her spider phobia. The judgment on the claim for wrongful discharge must be reversed.

Reversed and remanded with instructions to delete from the judgment awards for emotional distress for invasion of privacy and for emotional distress, lost earnings and punitive damages for wrongful discharge; otherwise affirmed.

---

impairment which substantially limits one or more major life activities, has a record of such an impairment or is regarded as having such an impairment.

"(3) As used in subsection (2) of this section:

"(a) 'Major life activity' includes, but is not limited to self-care, ambulation, communication, transportation, education, socialization, employment and ability to acquire, rent or maintain property.

"(b) 'Has a record of such an impairment' means has a history of, or has been misclassified as having such an impairment.

"(c) 'Is regarded as having an impairment' means that the individual:

"(A) Has a physical or mental impairment that does not substantially limit major life activities but is treated by an employer or supervisor as having such a limitation;

"(B) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitude of others toward such impairment; or

"(C) Has no physical or mental impairment but is treated by an employer or supervisor as having an impairment."